341 F.3d 112
 NEW YORK COASTAL PARTNERSHIP, INC., Maurice Barbash, John W. Lund, Sandy Associates, Eugene D. Falk, David Ash, Jerome Levy, M.D., Wells Newell, Joyce Segal, the Harbour Club, Modica Associates of New York 122, LLC, Fire Island Ferries, Inc., JMA Industries, Inc., David A. Sloane, Harry Paritsky, White Cap Fish Company, Inc., Leonard Weinstein, Richard Stafford, Pamela Johnson,
Sayville Ferries Service, Inc., David Park Ferry Co., Robert Johnson, Dunewood Property Owners' Association, Fair Harbor Fire District & James Grover, Jr., Plaintiffs-Appellants,
v.
UNITED STATES DEPARTMENT OF THE INTERIOR, Gale Norton, Secretary of Interior, Constantine J. Dillon, Superintendent of the Fire Island National Seashore, United States Army Corps of Engineers, Gregory R. Dahlberg, Acting Secretary of the Army, Robert B. Flowers, Lt. Gen, Chief of Engineers, U.S. Army Corps of Engineers, Randy L. Daniels, Secretary, New York State Department of State & Erin M. Crotty, Commissioner, State of New York, Department of Environmental Conservation, Defendants-Appellees.
 Docket No. 02-6132.
 United States Court of Appeals, Second Circuit. August Term, 2002.
 Argued: April 2, 2003.
 Decided: August 18, 2003.
 
 LEON FRIEDMAN, The Law Office of Leon Friedman, Esq., New York, N.Y. David T. Goldberg, Lawrence R. Liebesman, Holland & Knight, and Irving Like, Reilly, Like, Tenety & Ambrosino, on the brief) for Plaintiffs-Appellants.
 JANICE TAYLOR, Assistant Attorney General, New York State Attorney General's Office, New York, N.Y. (Eliot Spitzer, Attorney General of the State of New York, Deon Nossel, Assistant Solicitor General, and Norman Spiegel, Assistant Attorney General, on the brief) for Defendants-Appellees Randy L. Daniels and Erin M. Crotty.
 PAUL KAUFMAN, Assistant U.S. Attorney, U.S. Attorney's Office for the Eastern District of New York, Brooklyn, N.Y. (Roslynn R. Mauskopf, U.S. Attorney, and Deborah B. Zwany, Assistant U.S. Attorney, on the brief) for Defendants-Appellees United States Department of Interior, Gale Norton, Constantine J. Dillon, United States Army Corps of Engineers, Gregory R. Dahlberg, and Robert B. Flowers.
 Before: NEWMAN, POOLER, KATZMANN, Circuit Judges.
 POOLER, Circuit Judge.
 
 
 1
 Plaintiffs-appellants appeal from the April 22, 2002 judgment of the United States District Court for the Eastern District of New York (Jacob Mishler, District Judge) granting defendants-appellees' motion to dismiss the second amended complaint. We affirm on the basis that plaintiffs-appellants do not have standing to bring this suit.
 
 BACKGROUND
 
 2
 Fire Island is located off the coast of Long Island, New York. The island, which is approximately 32 miles long and between one-quarter and three-quarters of a mile wide, is home to a series of beaches, parks, houses, and tourist-related businesses. The Piping Plover, a migratory songbird species whose Atlantic Coast population is "likely to become endangered in the foreseeable future," as determined by the U.S. Fish & Wildlife Service, pursuant to 16 U.S.C. § 1532(20), uses the island's beaches for nesting. The island itself helps protect Long Island from storms and flooding from the Atlantic Ocean.
 
 
 3
 In 1964, Congress passed the Fire Island National Seashore Act ("FINSA"), 16 U.S.C. § 459e et seq., which places primarily responsibility for conserving and preserving the Fire Island coastline with the U.S. Department of the Interior ("the DOI") and the U.S. Department of Army, Corps of Engineers ("the Corps of Engineers"). Pursuant to the Flood Control Act of 1970, the state of New York must approve any shore erosion or beach protection measure. See 42 U.S.C. § 1962d-5b.
 
 
 4
 At present, the DOI and the Corps of Engineers are conducting a reformulation study to determine the best method to control shore erosion on Fire Island. As an interim protection measure, the Corps of Engineers proposed the Fire Island Interim Project ("the FIIP"), which would entail using sand to construct or enhance various dunes and beaches on the island. The Corps of Engineers estimated that the FIIP would require an initial investment of $52.8 million and annual maintenance costs of $5.2 million over a five-year period. Faced with a total estimated cost of $78.8 million, the DOI and the Corps of Engineers decided not to proceed with the FIIP. Moreover, the state of New York did not agree to endorse the FIIP.
 
 
 5
 In May of 2001, plaintiffs-appellants filed this action against "various federal and state authorities responsible for Fire Island's erosion crisis." Some plaintiffs-appellants fear that their property on Fire Island will eventually "wash away." Plaintiffs-appellants who own property on Long Island allege that the erosion of Fire Island's beaches and sand dunes will result in damage to and eventual destruction of their property, as Fire Island "play[s] a critical role in protecting against storm damage and flooding" and "protect[s] hundreds of millions of dollars worth of property on the mainland." Plaintiffs-appellants, including the New York Coastal Partnership, Inc., also are concerned about the environmental consequences of the erosion of Fire Island's beaches, which includes the destruction of the Piping Plover's nesting habitat.
 
 
 6
 Plaintiffs-appellants allege that defendants-appellees failed to take remedial and protective actions that would remedy Fire Island's sand erosion problem. Plaintiffs-appellants also allege that defendants-appellees exacerbated the problem by preventing the replenishment of sand through "littoral drift," whereby sand from other islands would migrate down-drift to Fire Island. Plaintiffs-appellants assert that these acts and omissions constitute: 1) a de facto taking of property in violation of the Fifth and Fourteenth Amendments of the United States Constitution; 2) a deprivation of property in violation of 42 U.S.C. § 1983; 3) a violation of the Endangered Species Act, 16 U.S.C. § 1531 et seq.; 4) breaches of statutory and fiduciary duties arising under FINSA, the Flood Control Act, the Wilderness Act, 16 U.S.C. § 1131 et seq., the National Park Service Act, 16 U.S.C. § 1 et seq., the National Environmental Policy Act, 42 U.S.C. § 4321 et seq., the Environmental Quality Improvement Act of 1970, 42 U.S.C. § 4371 et seq., the Water Resources Development Act of 1999, Pub.L. 106-53, and the Coastal Zone Management Act, 16 U.S.C. § 1451 et seq.; and 5) a violation of the Administrative Procedures Act, 5 U.S.C. § 701 et seq. ("APA").
 
 
 7
 The United States District Court for the Eastern District of New York (Jacob Mishler, District Judge) granted defendants-appellees' motion to dismiss the second amended complaint on April 19, 2002. With respect to the takings claim, the district court ruled that the Takings Clause only prohibits takings "without just compensation," and the court noted that "both the federal and state judicial systems provide adequate post-deprivation remedies by which [plaintiffs-appellants] might bring an action seeking `just compensation' for the alleged governmental taking." The district court dismissed plaintiffs-appellants' claim under 42 U.S.C. § 1983 pursuant to sovereign immunity. The district court dismissed the claim under the Endangered Species Act, holding that "[p]laintiffs have not identified any conduct, in which the Defendants have engaged, which can serve as the basis of an action under the [Act]." In particular, the district court found that plaintiffs-appellants complained largely of government inaction and pleaded only one affirmative act, which predated the Endangered Species Act and was time-barred. The district court dismissed plaintiffs-appellants' claims that defendants-appellees breached their statutory and fiduciary duties, holding that the federal defendants-appellees did not waive sovereign immunity and that none of the statutes imposed an affirmative duty upon the state defendants-appellees. Finally, the district court held that plaintiffs-appellants could not maintain their APA claim because agency inaction is presumably immune from judicial review and there was no "final agency action" in this case. Plaintiffs-appellants now appeal the district court's judgment.
 
 DISCUSSION
 
 8
 Plaintiffs-appellants seek relief that would compel defendants-appellees to implement the FIIP or to take affirmative action to combat shore erosion on Fire Island. However, plaintiffs-appellants do not have standing to assert any of their claims for equitable relief, as we cannot conclude that the remedy they seek would likely redress the injuries of which they complain.
 
 
 9
 In order to have standing, a plaintiff must satisfy three constitutional requirements. First, the plaintiff must have suffered an "injury in fact," which is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations and quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be `fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" Id. (citation omitted) (alterations in original). Third, and most important for purposes of this appeal, "it must be `likely,' as opposed to merely `speculative,' that the injury will be `redressed by a favorable decision.'" Id. (citation omitted).
 
 
 10
 Plaintiffs-appellants have no standing in this case, because we can only speculate whether the remedy they seek would redress their purported injuries.[1] Plaintiffs-appellants identify no statutory authority that would specifically require defendants-appellees to adopt the FIIP. Despite plaintiffs-appellants' optimism, there is no indication that the FIIP would, in fact, remedy Fire Island's erosion problems. Moreover, we recognize that the FIIP is merely an interim plan spanning a five-year period. Accordingly, even were the FIIP successful, at best, it would be terminated and shortly replaced by another program whose chances of success are only speculative at this point in time.
 
 
 11
 Plaintiffs-appellants argue that defendants-appellees' failure to act violates the Endangered Species Act, FINSA, the National Park Service Act, the Water Resources Development Act, and 42 U.S.C. § 1983.[2] However, plaintiffs-appellants identify no duty in any of these statutes that would require defendants-appellees to act in a manner that would likely redress the injury of which they complain. Plaintiffs-appellants argue that defendants-appellees are violating the Endangered Species Act because their inaction is destroying the nesting area of the Piping Plover. Section 9 of the Endangered Species Act makes it unlawful for any person to "take" any endangered or threatened species. Babbitt v. Sweet Home Chapter of Cmtys. for a Great Oregon, 515 U.S. 687, 690, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995). The act defines "take" as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). While there is support for the notion that omissions — in the face of a duty to act — may constitute violations of the Endangered Species Act, see Babbitt, 515 U.S. at 716, 115 S.Ct. 2407 (Scalia, J., dissenting), plaintiffs-appellants identify no duty requiring defendants-appellees to act in a manner that would likely redress their alleged injuries.
 
 
 12
 Similarly, FINSA and the National Park Service Act impose no specific duties to act under these circumstances at this time. These statutes speak only in terms of general duties while affording the federal defendants-appellees considerable discretion in achieving the statutes' general mandates. FINSA provides that the Chief of Engineers, Department of the Army, has the authority to undertake shore erosion control of Fire Island. 16 U.S.C. § 459e-7(a). The act also provides that "[t]he Secretary [of the Interior] shall administer and protect the Fire Island National Seashore with the primary aim of conserving the natural resources located there." 16 U.S.C. § 459e-6(a). Similarly, the National Park Service Act created the National Park Service, which shall promote and regulate the use of the Federal areas known as national parks, monuments, and reservations ... by such means and measures as to conform to the fundamental purpose of the said parks, monuments, and reservations, which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.
 
 
 13
 16 U.S.C. § 1. While plaintiffs-appellants interpret these statutes as imposing general duties, there is no indication that the federal defendants-appellees' exercise of discretion violates any specific requirement or prohibition, as Congress afforded them considerable discretion in exercising their authority to remedy shore erosion on Fire Island.
 
 
 14
 Plaintiffs-appellants pin most of their hopes on the Water Resources Development Act of 1999, which required "the Secretary [of the Army], in coordination with the heads of other Federal departments and agencies, to complete all procedures and reviews expeditiously and to adopt and submit to Congress, not later than 120 days after the date of enactment of this Act, a mutually acceptable shore erosion plan for the Fire Island Inlet to [the] Moriches Inlet...." Pub.L. 106-53 § 342. Unlike the other statutes plaintiffs-appellants cite, the Water Resources Development Act contains express provisions for specific action. Nevertheless, we cannot conclude that enforcement of this provision is likely to remedy Fire Island's shore erosion problem. The Water Resources Development Act does not require the adoption of any specific plan. Nor does the act mandate that defendants-appellees adopt and submit to Congress a successful shore erosion plan. While the plan must be "mutually acceptable," by the act's plain language, this term means only that it must be acceptable to the Secretary of the Army and "the heads of other Federal departments and agencies." The plan need not be acceptable to plaintiffs-appellants. Thus, compliance with the Water Resources Development Act would not necessarily make it likely that any plan adopted and submitted to Congress would remedy Fire Island's shore erosion problem.
 
 
 15
 For the same reason, plaintiffs-appellants do not have standing to assert their claims for injunctive relief under 42 U.S.C. § 1983. Nor do plaintiffs-appellants have standing to assert claims under the Administrative Procedures Act. See Motor Coach Indus., Inc. v. Dole, 725 F.2d 958, 963 (4th Cir.1984) (recognizing that standing to assert a claim under the APA requires that "the alleged injury must be such that it likely would be redressed by a favorable decision"). We cannot conclude that the remedy plaintiffs-appellants seek would likely redress their alleged injuries.
 
 
 16
 That is not to say that plaintiffs-appellants have no remedy for their purported injuries. While we express no views on the merits of their claim that the defendants-appellees' failure to prevent shore erosion on Fire Island constitutes a de facto taking, the Takings Clause prohibits the government from seizing private property without providing "just compensation." It is not relevant that the government allegedly "took" the property at issue prior to resolving the issue of compensation, as "[t]he Fifth Amendment does not require that compensation precede the taking." Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1016, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984). Although plaintiffs-appellants argue that a remedy at law is inadequate, they do not have standing to seek an equitable remedy in this situation. Nor do they convince us that a remedy at law is, in fact, "inadequate."[3]
 
 CONCLUSION
 
 17
 Based upon the foregoing, we affirm the judgment of the United States District Court for the Eastern District of New York.
 
 
 
 Notes:
 
 
 [1]
 For purposes of this appeal, we assume without deciding that the injuries of which plaintiffs-appellants complain are "actual" or "imminent," and not "conjectural" or "hypothetical."Lujan, 504 U.S. at 560, 112 S.Ct. 2130.
 
 
 [2]
 In their second-amended complaint, plaintiffs-appellants alleged that defendants-appellees have violated a host of statutes. Before this Court, however, plaintiffs-appellants specifically, argue only that defendants-appellees have violated the Endangered Species Act, FINSA, the National Park Service Act, the Water Resources Development Act, and 42 U.S.C. § 1983. While plaintiffs-appellants reference "the other individual statutes that Defendants are charged with violating," they provide no briefing specific to their initial allegations that defendants-appellees have violated the Fire Island Wilderness Act, the National Environmental Policy Act, the Environmental Quality Improvement Act of 1970, and the Coastal Zone Management Act. Plaintiffs-appellants also concede that the federal defendants-appellees are immune from liability under the Flood Control Act and provide no briefing that discusses whether the state defendants-appellees are liable under this statute. Accordingly, plaintiffs-appellants have waived these claims,see LoSacco v. City of Middletown, 71 F.3d 88, 92-93 (2d Cir. 1995), though they have no standing to assert them for the reasons discussed in this opinion.
 
 
 [3]
 However, "taking claims against the Federal Government are premature until the property owner has availed itself of the process provided by the Tucker Act."Preseault v. ICC, 494 U.S. 1, 11, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) (citations omitted).